[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO STRIKE SECOND REVISED COMPLAINT(#155)
This case arises out of an alleged assault on the plaintiff by one Oliver M. Toomey, who is not a party to this action. The basic allegations of the complaint begin with the claim that the plaintiff's roommate, Brady Noel, who is also not a party to this action, sexually assaulted the defendant, Kristen Bakis, a Quinnipiac College student. Subsequently, Bakis invited Toomey, her cousin, to Quinnipiac, described the assault to him, incited him against Noel and gave him information about where Noel lived on campus. Toomey spent the night in Bakis' dormitory room, and, the next day, went to Noel's room, where he allegedly beat Noel with an iron pipe. When the plaintiff attempted to intercede on his roommate's behalf, Toomey allegedly inflicted upon him the severe injuries which are the subject matter of this litigation.
This court previously granted Bakis' motion to strike counts seven, eight and nine of the plaintiff's revised complaint, CT Page 3073 alleging, respectively, negligence, recklessness and conspiracy. (See Memorandum of Decision dated September 28, 1995). Following that decision, the plaintiff has filed a second revised complaint, pleading over, as he is authorized to do by Practice Book Sec. 157, and amplifying the factual allegations in support of his claims of negligence, recklessness and conspiracy by Bakis. In particular, the first count of the second revised complaint contains the following new allegations which are incorporated by reference in the seventh, eighth and ninth counts:
a) that Noel physically and sexually assaulted Bakis, and that Bakis telephoned Toomey to tell him this. (The comparable paragraph of count one of the initial revised complaint, also incorporated by reference into the earlier versions of the seventh, eighth and ninth counts, stated only that Bakis had told Toomey that she and Noel had been involved in an "argument" and did not make explicit that she had told him this by telephone prior to his arrival at the Quinnipiac College campus).[1]
b) that Toomey was the person whom Bakis loved "more than anyone else in the world since early childhood", was "a strong healthy male 18 years of age", and that he "became inflamed by the facts which he learned from Bakis in the telephone conversation and immediately drove to Quinnipiac" at her invitation.
c) that Toomey spent the night at Bakis' dorm "harbored as a guest". (The initial revised complaint omits the word "harbored").
d) that while with Bakis, Toomey "was concurrently inflamed to the heat of passion against Brady Noel by Bakis due to her continued efforts at relating the facts of the sexual and physical abuse to Toomey long into the evening and during the morning of the next day, during which conversations Bakis and Toomey discussed confronting and/or attacking Brady Noel in a manner which would constitute an assault and/or battery". (These allegations were not present in the initial revised complaint).
Bakis has again moved to strike these three counts, alleging that even as amended, these counts fail to state claims upon which relief can be granted.
"The purpose of a motion to strike is to `contest . . . the CT Page 3074 legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted.'" NovametrixMedical Systems. Inc. v. BOC Group. Inc., 224 Conn. 210, 214-15,618 A.2d 25 (1992). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Id., 215. "The court must construe the facts in the complaint most favorably to the plaintiff." Id. The motion "admits all facts well pleaded."Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989). A motion to strike "does not admit legal conclusions or the truthor accuracy of opinions stated in the pleadings." (Emphasis in original.) Mingachos v. CBS. Inc., 196 Conn. 91, 108,491 A.2d 368 (1985).
Construed in the light most favorable to the plaintiff, the questioned counts basically claim that Bakis, extremely upset over what had happened to her, enlisted the aid of Toomey, to whom she was extremely close. Over the course of the evening that he spent with her, they discussed having Toomey confront and assault Noel, and she succeeded in getting him so worked up that the next day, Toomey went to Noel's dormitory with the obvious intent of causing him harm. Because Toomey was a strong and healthy young man who was emotionally close to his cousin and whose passions had been aroused by Bakis' account of what had happened to her, Bakis could foresee, or should have foreseen, that when Toomey arrived at Noel's room, the plaintiff, as Noel's roommate, would be likely to get caught up in whatever altercation might occur. Based on the alleged facts, and plaintiff's conclusion that what happened to him was foreseeable by Bakis, plaintiff claims that Bakis is liable to him for his injuries based on her negligence (count seven), recklessness (count eight) and her conspiracy with Toomey to injure Noel (count nine).
As to count seven, which alleges negligence, Bakis again claims that the count fails to state a claim upon which relief can be granted in that there are no facts alleged upon which the court could conclude that Bakis owed a duty of care to Bendowski, the plaintiff. As in the original stricken seventh count, no specific relationship between the plaintiff and the defendant Bakis has been alleged upon which a legal duty owed by her to him could be premised. Neal v. Shields, 166 Conn. 3, 12-13 (1974);Shore v. Stonington, 187 Conn. 147, 151 (1982). In the absence of such a relationship, the question becomes "would the ordinary [person] in the defendant's position, knowing what [she] knew or should have known, anticipate that harm of the general nature of CT Page 3075 that suffered was likely to result?" Frankovitch v. Burton,185 Conn. 14, 21 (1981). Such anticipation in this case requires many assumptions . . . that Noel had a roommate; that Bakis knew Noel had a roommate; that Bakis knew that the roommate was likely to be present when Toomey arrived; that Toomey would provoke a physical altercation with Noel in Noel's room; that Toomey would be armed with a metal pipe; that the plaintiff would be likely to intervene in such a confrontation; and that Toomey would turn his wrath on the plaintiff, to name just a few. Under the circumstances of this case, and construing the pleading in the light most favorable to the plaintiff, these assumptions may not be unreasonable.[2]
"In order to sustain a cause of action for negligence, the Court must determine whether the actor owed a duty of care to the victim, that the duty was breached by the actor's failure to meet the standard of care, and that the breach was the proximate cause of the harm suffered by the victim." Coburn v. Lenox Homes, Inc.,186 Conn. 370, 377 (1984). Duty is a question of law and only if a duty is found to exist does the trier of fact then determine whether the defendant violated that duty. Shore v. Stonington,187 Conn. 147, 151-52 (1982). Where there is no duty, there can be no actionable negligence. The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. Anderson v. Churches FriedChicken. Inc., 40 Conn. Sup. 343, 499 A.2d 908, citingFrankovitch v. Burton, 185 Conn. 14, 20-21 440 A.2d 254
(1981).[3]
No Connecticut case has been found that directly addresses the factual situation presented by this case. Section 315 of the Restatement 2nd Torts, however, provides some guidance:
 There is no duty so to control the conduct of a third person to prevent him from causing physical harm to another unless: (a) a special relation exists between the actor and third person which imposes a duty upon the actor to control the third person's conduct; or (b) a special relation exists between the actor and another which gives the other a right to protection.
The types of situations that impose a duty on an actor because of his or her relation to a third person include that of parents, employers, and landowners. Id. at Sections 316-319. CT Page 3076
Obviously, this case does not fit into any of these situations. Although Bakis is alleged to have a special relationship with Toomey, it is not the sort of special relationship with the assailant which placed a duty upon her to control his conduct. Nor was there a special relationship which placed a duty on Bakis to protect the plaintiff from harm. The allegation in the complaint that Bakis breached her duty of care to the plaintiff by "leaving Oliver Toomey unsupervised" is totally unsupported in that there are no factual allegations suggesting that Toomey was a person in need of "supervision" or whom she would have a duty to "supervise". "Negligence can not be predicated upon a failure to perform an act which the actor was under no duty to perform." Behlman v. Universal Travel Agency,4 Conn. App. 688, 691 (1985).
Moreover, the Restatement of Torts, 2nd, Section 314 expresses the position that foreseeability alone is not sufficient to create a duty to act for the protection of others:
 The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.
Section 314A of the Restatement addresses the special relations that give rise to a duty to aid or protect as follows:
 Section 314A. Special Relations Giving Rise to Duty to Aid or Protect
 (1) A common carrier is under a duty to its passengers to take reasonable action.
(2) An innkeeper is under a similar duty to his guests.
 (3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.
 (4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.
The relationship between Bakis and the plaintiff falls into none of these categories. It appears, however, that different CT Page 3077 standards may apply when one has reason to believe that a person is about to commit an intentional tort or a criminal act against another. Section 448 of the Restatement 2nd, Torts provides as follows:
 Section 448. Intentionally Tortious or Criminal Acts Done Under Opportunity Afforded by Actor's Negligence.
 The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.
Footnote c to Section 448 elaborates on this proposition:
 c. When actor's negligence consists in creating a risk of criminal action by third person. The actor's conduct may be negligent solely because he should have recognized that it would expose the person, land, or chattels, of another to an unreasonable risk of criminal aggression. If so, it necessarily follows that the fact that the harm is done by such criminal aggression cannot relieve the actor from liability (see Sec. 449). However, it is not necessary that the conduct should be negligent solely because of its tendency to afford an opportunity for a third person to commit the crime. It is enough that the actor should have realized the likelihood that his conduct would create a temptation which would be likely to lead to its commission.
 This is true although the likelihood that such a crime would be committed might not be of itself enough to make the actor's conduct negligent, and the negligent character of the act arises from the fact that it involves other risks which of themselves are enough to make it unreasonable, or from such risks together with the possibility of crime.
Further, Section 449 of Restatement 2nd, Torts provides:
 Section 449. Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent. CT Page 3078
 If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.
Comment:
 a. This Section should be read together with Sec. 302B, and the Comments to that Section, which deal with the foreseeable likelihood of the intentional or even criminal misconduct of a third person as a hazard which makes the actor's conduct negligent. As is there stated, the mere possibility or even likelihood that there may be such misconduct is not in all cases sufficient to characterize the actor's conduct as negligence. It is only where the actor is under a duty to the other, because of some relation between them, to protect him against such misconduct, or where the actor has undertaken the obligation of doing so, or his conduct has created or increased the risk of harm through the misconduct that he becomes negligent. (emphasis provided).
In addition, Section 302B of Restatement 2nd, Torts states:
 An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.
See, also, Kargul v. Sandpiper Dunes Ltd. Partnership, No. 50 56 00 (Jan. 29, 1991) 1991 Ct. Sup. 799.
Based on these considerations, given the present status of the pleadings and the requirement that the court construe them in the light most favorable to the plaintiff, this court cannot conclude as a matter of law that the plaintiff has failed to state a claim against Bakis upon which relief may be granted. The court also bears in mind that in negligence cases such as this, which are highly fact-dependent, the striking of complaints, like the granting of summary judgment, is disfavored. Amendola v.Geremia, 21 Conn. App. 35, cert. denied, 215 Conn. 803 (1990) CT Page 3079
Additionally, on the facts as alleged, and construing the pleading in the light most favorable to the plaintiff, it cannot be concluded as a matter of law that none of the actions attributable to Bakis could be construed as the proximate cause of this plaintiff's injuries.
 [T]he "test" of proximate cause is whether the defendant's conduct is a "substantial factor" in producing the plaintiff's injury. Wu v. Fairfield, supra, 438. Boehm v. Kish, supra; Tetro v. Stratford, supra; see also Ferndale Dairy Inc. v. Geiger, 167 Conn. 533, 538, 356 A.2d 91 (1975) (defining "substantial factor" as one which "must have continued down to the moment of the damage or, at least, down to the setting in motion of the final active injurious force which immediately produced or preceded the damage"); but see W. Prosser W. Keeton, supra, p. 278. That negligent conduct is a "cause in fact," however, obviously does not mean that it is also a "substantial factor" for the purposes of a proximate cause inquiry. The "substantial factor" test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, "`whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence.' Merhi v. Becker, 164 Conn. 516, 521, 325 A.2d 270 (1973); see Palsgraf v. Long Island R.R. Co., supra, 354." Coburn v. Lenox Homes, Inc., supra, 384. In applying this test, we look "from the injury to the negligent act complained of for the necessary causal connection. Collins v. City National Bank Trust Co., 131 Conn. 167, 171, 38 A.2d 582 (1944).'" Peterson v. Oxford, 189 Conn. 740, 749, 459 A.2d 100 (1983).
Doe v. Manheimer, 212 Conn. 748, 758-759 (1989).
The motion to strike as to count seven must therefore be denied.
The same analysis that resulted in the denial of the motion to strike count seven applies also to count eight, which alleges recklessness. The plaintiff has outlined a course of conduct by Bakis which, if viewed most favorably to the plaintiff, could form a basis for a finding of recklessness. The fact that the recklessness count relies upon the same factual allegations as the negligence claim does not, in and of itself, provide Bakis with the basis for a motion to strike. See, Palmieri v. Smith,9 CSCR 891 (August 29, 1994). The motion to strike count eight is CT Page 3080 therefore denied.
Count nine alleges only that Bakis and Toomey conspired "to confront and or attack Brady Noel". It provides no foundation for a claim of conspiracy to injure the named plaintiff, who has given the court no authority to support the proposition that factual allegations tending to show a civil conspiracy against one individual can, without more, be turned into a cause of action alleging a conspiracy against another individual.
Altieri v. Colasso, 168 Conn. 329 (1975), which upheld a claim of battery against an individual who had intended to assault another, is inapposite. Conspiracy is not subject to the same "transferred intent" analysis that was applied in Altieri.
Judge Blue's thoughtful discussion of the treatment of tort of civil conspiracy by the courts of this state in Talit v.Peterson, 1 Conn. Ops. 1167, 1168 (Hartford-New Britain J.D. at Hartford, September 27, 1995) does not touch on the unusual claim being made by the plaintiff here. The fact that Bakis and Toomey may have conspired against Noel does not give the plaintiff a cause of action based on a conspiracy that was not directed against him. To the extent that the results of Bakis' alleged negligence and/or recklessness were foreseeable, however, her participation in what might also have been a conspiracy against Noel provide the plaintiff with a colorable cause of action grounded in those two torts, which are the subjects of counts seven and eight.
The motion to strike the ninth count is therefore granted.
In summary, the motion to strike is granted as to count nine but denied as to counts seven and eight of the plaintiff's second revised complaint.
Jonathan E. Silbert, Judge