## HAROLD SPENCER *v.* FRANK NESTO

Superior Court      Judicial District of      File No. CV980261798S
New Haven at Meriden

Memorandum filed May 19, 2000

*Clifford M. Ruocco* and *Terence S. Hawkins*, for the plaintiff.

*Sizemore Law Offices*, for the defendant.

## I

## INTRODUCTION

ROBINSON, J. Before this court is the motion for summary judgment filed by the defendant, Frank Nesto, which raises the interesting issue of apparent first impression regarding whether the defendant, as a landlord, owes a duty to protect third parties from the criminal conduct of his tenants. The issue for this court to resolve is whether a landlord owes a duty to protect and safeguard passersby from his tenants' intentional criminal or negligent acts.

The inquiry required is twofold; first, this court must decide whether the conduct of the tenant was foreseeable. Only if such conduct is foreseeable does the court reach the next inquiry which is whether the landlord has a legal duty to control the conduct. Applying this analysis, this court concludes that Connecticut does not recognize a duty between a landlord and a third party who is injured by the negligent or criminal acts of the landlord's tenants. Because no duty is owed to the

plaintiff, the defendant's motion for summary judgment should be granted.

## II

## FACTS

The following facts are relevant to this disposition of the defendant's motion for summary judgment. On August 17, 1996, after a visit to Michael's Café, the plaintiff, Harold Spencer, and his two acquaintances were walking past the defendant's property known as 507 Main Street in East Haven (property). The property is located on the same side of the street as Michael's Café, and is separated by an adjacent parking lot and one small building. The plaintiff and his two acquaintances were assaulted by a group of people; allegedly including Anthony Montefusco, Sr., and Anthony Montefusco, Jr.

The plaintiff filed a single count complaint on February 24, 1998, alleging that the injuries he sustained were directly and proximately caused by the negligence and carelessness of the defendant landlord. The complaint alleges that the defendant rented or leased the property to the Montefusco family, which included as its members Anthony Montefusco, Sr., and Anthony Montefusco, Jr.[1] The complaint further alleges that the defendant is liable to the plaintiff, a passerby, because the defendant knew or should have known that the tenants at his property presented a danger to "innocent members of the community as the victims of assaults perpetrated by said individuals." The plaintiff alleges

---

[1] The complaint names Anthony Montefusco, Sr., and Anthony Montefusco, Jr., as tenants of the property and as persons involved in the plaintiff's assault. The defendant's answer and special defense, filed on April 14, 1999, admits that Anthony Montefusco, Sr., and Anthony Montefusco, Jr., were tenants at the time of the incident now at issue. The affidavit attached to the defendant's motion for summary judgment, however, attests that Anthony Montefusco, Sr., was not an authorized tenant of the property.

that the defendant was negligent in that he failed to terminate his lease or rental agreement with the Montefusco family and failed and neglected to take legal action to evict the Montefusco family.

On April 14, 1999, the defendant filed an amended answer and special defense alleging contributory negligence. In his answer, the defendant admits that he knew that the police had been called to the premises prior to the incident now at issue.

On May 12, 1999, the defendant filed a motion for summary judgment on the ground that the defendant has no duty to protect passersby and thus, is entitled to summary judgment as a matter of law. The defendant relies on 2 Restatement (Second), Torts § 379A (1965), entitled "Activities After a Lessor Transfers Possession"[2] and on landlord tenant law for the proposition that no duty exists between a landlord and passersby.

[2] Section 379A of 2 Restatement (Second), Torts (1965) provides:

"A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if,

"(a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and

"(b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken."

Comment (a) provides in pertinent part that "[t]he rule stated in this Section is closely related to that stated in § 837 as to the liability of the lessor for a nuisance on the land, and should be read together with that Section." 2 Restatement (Second), supra, § 379A, comment (a).

Section 837, "Activities After Transfer of Land" of 4 Restatement (Second), supra, provides in pertinent part:

"(1) A lessor of land is subject to liability for a nuisance caused by an activity carried on upon the land while the lease continues and the lessor continues as owner, if the lessor would be liable if he had carried on the activity himself, and

"(a) at the time of the lease the lessor consents to the activity or knows or has reason to know that it will be carried on, and

"(b) he then knows or should know that it will necessarily involve or is already causing the nuisance."

The supporting documentation attached to the defendant's motion is a single affidavit signed by the defendant himself. The affidavit attests that the defendant was aware of the prior police visits to the Montefuscos, but that he was not aware and had no reason to know that any of those visits involved assaults to others on the property or passing by the property. Further, the affidavit attests that the defendant was not aware of any prior assaults or criminal activity on the property, that he had no knowledge or reason to anticipate that any of the tenants would assault third parties passing by the property, and that he did not participate in or consent to the assault or the Montefuscos' participation in the assault. The affidavit further attests that Anthony Montefusco, Sr., was not an authorized tenant of the property.

On January 18, 2000, the plaintiff filed a brief in opposition to the defendant's motion for summary judgment. The plaintiff argues that genuine issues of material fact exist as to whether the defendant knew or should have known that the tenants at the property presented a danger to passersby, and that the defendant did have a duty to take reasonable steps to prevent injury. The plaintiff attaches portions of both the plaintiff's and the defendant's deposition transcripts.[3] During his deposition, the defendant confirmed that his used car business was located on the property. Also, the plaintiff attaches an East Haven police arrest warrant application for Anthony Montefusco, Jr., with notations indicating that the property has been a source of many complaints,

---

[3] "[T]he Superior Court has been split as to whether deposition testimony, either uncertified or certified, may be considered for the purposes of a motion for summary judgment . . . ." *Schratwieser* v. *Hartford Casualty Ins. Co.*, 44 Conn. App. 754, 756 n.1, 692 A.2d 1283, cert. denied, 241 Conn. 915, 696 A.2d 340 (1997). "[W]e have not determined it to be improper for a trial court to consider deposition testimony in ruling on a motion for summary judgment." Id., and cases cited therein.

some of which led to investigations for assaults, drug related offenses, noise and theft complaints.

The plaintiff also attaches copies of housing violations, notices of fire and life safety hazard violations and zoning violations. In addition, the plaintiff attaches a copy of a complaint investigation report detailing a complaint regarding children living in the basement of the property with a notation that the health department agent handling the matter was unsure as to whether the complaint could be proven.

Lastly, the plaintiff provides an affidavit from Lisa McDaniel.[4] McDaniel's backyard abuts the defendant's property. McDaniel attests that during the Montefuscos' tenancy, she had problems with illegal fireworks, an unused refrigerator on the rear lawn, rotten food thrown in her yard, loud partying and stolen merchandise being placed in her yard. McDaniel claims to have telephoned the defendant with her concerns regarding the Montefuscos, but the defendant does not recall receiving McDaniel's telephone message.

### III

### DISCUSSION

Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing

---

[4] This "affidavit" is in the form of an investigator's report of McDaniel's statements. Such an affidavit, it is noted, may be considered heresay and thus, inadmissible. It is also noted, however, that excluding this affidavit would not change the conclusions reached in this memorandum of decision.

the existence of such an issue." (Internal quotation marks omitted.) *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 771 n.4, 675 A.2d 829 (1996). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 24, 727 A.2d 204 (1999).

It is well established that summary judgment is particularly " 'ill-adapted to negligence cases, where, as here, the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation.' " *Maffucci* v. *Royal Park Ltd. Partnership*, 42 Conn. App. 563, 568, 680 A.2d 333 (1996), rev'd on other grounds, 243 Conn. 552, 707 A.2d 15 (1998), quoting *Michaud* v. *Gurney*, 168 Conn. 431, 434, 362 A.2d 857 (1975). "A determination of negligence is necessarily one of fact." *Maffucci* v. *Royal Park Ltd. Partnership*, supra, 568–69; see *Michaud* v. *Gurney*, supra, 434. "The issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment [however] because the question is one of law." *Pion* v. *Southern New England Telephone Co.*, 44 Conn. App. 657, 660, 691 A.2d 1107 (1997).

A

Foreseeability

As a general matter, it may be foreseeable that a tenant may cause harm to another person. In defining the limits of duty, however, "we have recognized that [w]hat is relevant . . . is the . . . attenuation between [the defendant's] conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 574, 717 A.2d 215 (1998).

Here, the plaintiff is alleging that the defendant's failure to terminate his lease with his tenants or his failure to initiate eviction proceedings directly and proximately caused the plaintiff's injuries. The ordinary landlord, knowing what this defendant knew or should have known, would not have anticipated that the plaintiff would have suffered the harm he did simply because the landlord did not initiate eviction proceedings or terminate his lease with his tenants. The defendant could not have foreseen that one or more of his tenants would have participated in a group fight resulting in injuries to a third person passerby.

The record offers no proof that the defendant had notice of the likelihood that the tenants would assault passersby. Nothing indicates that the defendant had reason to know of the tenants' assaults on third parties or of the tenants' violent behaviors. The type of harm, that is, the assault, was not foreseeable. Furthermore, the defendant could not have foreseen that the intentional criminal acts of his tenants would lead to injury of an unknown third party.

The plaintiff claims that the defendant is negligent in not safeguarding "innocent members of the community as the victims of assaults perpetrated" by his tenants' violent acts and is negligent because he knew or should have known that his tenants posed a threat to passersby. The plaintiff suggests that the court extend liability to a landlord for failing to warn the "community" of his tenants' propensity for violence. This theory of liability is tenuous at best. "It is a well established tenet of our tort jurisprudence that [d]ue care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable. See *Palsgraf* v. *Long Island R. Co.*, 248 N.Y. 339, 345, 162 N.E. 99 [1928] . . . ." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 575.

Similarly here, liability should not extend to require that a landlord safeguard against the remote possibility that a person walking by his property may be involved in a large group altercation that may result in injury to an unidentified third person. To extend liability to include these remote possibilities, especially absent proof of the landlord's notice of his tenants' violent tendencies, is too burdensome.

## B

### Policy Considerations

Viewing the evidence in the light most favorable to the plaintiff and assuming that the defendant could have foreseen the tenants' injury to the plaintiff, there still is a lack of duty. "[A] simple conclusion that the harm to the plaintiff was foreseeable . . . cannot by itself mandate a determination that a legal duty exists. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, supra, 246 Conn. 484.

Our Supreme Court has stated that "[e]xisting Connecticut precedents impose only a limited duty to take action to prevent injury to a third person. . . . [A]bsent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another." (Internal quotation marks omitted.) *Fraser* v. *United States*, 236 Conn. 625, 632, 674 A.2d 811 (1996). The defendant in the present case did not have control over the conduct of his tenants, even if he had control over the physical building in which they resided; nor

did he have a special relationship of custody with or control over the plaintiff. To impose a duty on a landlord to have control over a tenant's actions so that he could "safeguard the innocent members of the community" would be a draconian response to this unfortunate situation.

"As a general rule, a private person does not have a duty to protect another from a criminal attack by a third person. We recognize that this rule has sometimes in the past been applied in landlord-tenant law . . . . Among the reasons for the application of this rule to landlords are: judicial reluctance to tamper with the traditional common law concept of the landlord-tenant relationship; the notion that the act of a third person in committing an intentional tort or crime is a superseding cause of the harm to another resulting therefrom; the oftentimes difficult problem of determining foreseeability of criminal acts; the vagueness of the standard which the landlord must meet; the economic consequences of the imposition of the duty; and conflict with the public policy allocating the duty of protecting citizens from criminal acts to the government rather than the private sector." (Internal quotation marks omitted.) *Kargul* v. *Sandpiper Dunes Ltd. Partnership*, Superior Court, judicial district of New London, Docket No. 505600 (January 29, 1991) (*Axelrod, J.*).

The Supreme and Appellate Courts of Connecticut have not specifically addressed whether a landlord can be liable to a third party passerby. By analogy, however, this court in *Murphy* v. *Eddinger*, Superior Court, judicial district of Middlesex at Middletown, Docket No. CV980086973 (November 30, 1999) (*Robaina, J.*), did address whether a landlord can be liable for injuries a plaintiff sustained as a result of a tenant's horse. In *Murphy*, the plaintiff claimed that the defendant landowners knew or should have known of "violent propensities" of their tenant's horse and, therefore, should be

held responsible for their negligent failure to warn the plaintiff of the temperament of their tenant's horse. See id. In granting the defendant's motion for summary judgment, the court held that the defendants owed no legal duty to warn the plaintiff about violent propensities of their tenant's horse when the defendants had no control over the horse. The court stated that "there exists no common law authority to hold a landlord legally responsible for the acts of domestic animals owned, kept or harbored by his tenants—even abnormally dangerous animals." *Murphy* v. *Eddinger*, supra, Superior Court, Docket No. CV980086973; see also *Goff* v. *Timothy*, Superior Court, judicial district of New Haven, Docket No. 241611 (March 20, 1990) (*Berdon, J.*) (1 Conn. L. Rptr. 385).

The plaintiff attempts to analogize dangerous tenants with a defective condition. This analogy, however, fails. "Under the plaintiff's theory of liability, the law would logically extend to hold the landlord responsible for his negligence in failing to warn others of the tenant's propensity for negligence." *Murphy* v. *Eddinger*, supra, Superior Court, Docket No. CV980086973. The court held that "a property owner should not be held responsible for failing to warn others about or protect them from the potential negligent conduct of a tenant absent some evidence [that] a landlord exercised direct control over the instrumentality that caused the injury." Id. Similarly, here, the defendant landlord may not be held legally responsibile for the acts of his tenants, even dangerous tenants, when he has no control over his tenants' acts.

The plaintiff relies on *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 662 A.2d 753 (1995), to support the proposition that the defendant landlord owes a duty to the plaintiff. In *Stewart*, the plaintiff was a business invitee who was assaulted, robbed and murdered by a third person, not a party to the lawsuit.

Id., 600. The *Stewart* court held the parking garage owner and operator liable in negligence because he knew or should have known that previous robberies occurred in the garage and failed to provide adequate security or lighting to business invitees. Id., 613. The plaintiff analogizes *Stewart* with the present case. *Stewart*, however, is distinguishable. *Stewart* held the owner and operator of a garage liable for holding open to the public defective premises by not providing adequate security and lighting, despite his knowledge of previous robberies. The *Stewart* defendant had control over the premises and had the ability to remedy the problem, but chose not to. Simply adding more security guards and correcting dimly lit areas would have remedied the defects of the property and, consequently, limited his exposure to liability.

In contrast, the defendant in the present action has no such control over his tenants. A landlord can exercise control over the premises, as the *Stewart* defendant should have, but a landlord cannot exercise control over his tenants. The defendant landlord here could not have anticipated the criminal negligence of his tenants, and even if he could, he did not have control over the tenants' individual thoughts and actions. Assuming, arguendo, that the defendant knew of the tenants' violent propensities, his failure to initiate eviction proceedings or terminate the lease was not the cause of the plaintiff's injuries. Crimes occur for countless reasons, including impulses of criminals, but that does not make the risk of an accident or crime reasonably foreseeable by a defendant whose conduct may have played some part in the accident or crime. *Coste* v. *Riverside Motors, Inc.*, 24 Conn. App. 109, 114, 585 A.2d 1263 (1991); see also *Doe* v. *Manheimer*, 212 Conn. 748, 762, 563 A.2d 699 (1989), overruled in part on other grounds, *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 608.

The plaintiff also relies on *Bendowski* v. *Quinnipiac College*, Superior Court, judicial district of New Haven at Meriden, Docket No. 950248346S (April 9, 1996) (*Silbert, J.*) (16 Conn. L. Rptr. 470), and *Kargul* v. *Sandpiper Dunes Ltd. Partnership*, supra, Superior Court, Docket No. 505600, for the proposition that a duty does exist between this landlord and plaintiff. The facts of both cases, however, are inapposite to the present case.

In *Bendowski*, the court denied a motion to strike a negligence count where the defendant, who was recently assaulted by another individual, incited her cousin to confront her assailant. See *Bendowski* v. *Quinnipiac College*, supra, 16 Conn. L. Rptr. 471. In confronting her assailant, the cousin and the assailant's roommate physically began to fight. See id. The roommate brought an action in negligence alleging that the defendant knew or should have known that inciting her cousin would result in a fight. See id. The court held that, in this instance, a duty could be found to exist between the defendant and the third party because the defendant knew or should have known that inciting her cousin could lead to a fight in which the assailant's roommate would be involved. See id., 472; 2 Restatement (Second), supra, § 448 and comment (c); id., § 449, and comment (a); id., § 302B.

The *Bendowski* defendant knowingly encouraged and incited her cousin to instigate a fight with another person. The court held her liable for the consequences. Here, however, the landlord had no such control over the actions of his tenants. He was not aware of the situation or the altercation that ensued; he did not encourage his tenants; nor was he a participant in the altercation. The defendant landlord simply rented the property to a family. Members of the family were allegedly participants in a large group altercation. This defendant, unlike the *Bendowski* defendant, was far removed from the incident.

Lastly, the plaintiff cites *Kargul* v. *Sandpiper Dunes Ltd. Partnership*, supra, Superior Court, Docket No. 505600, in further support of his argument that this defendant owes a duty to the plaintiff. In *Kargul*, the court held the tenant Linda Conway Scott liable to another tenant for Scott's failure to warn the tenant of the presence of a known dangerous person. Scott had been living with Lafate F. Ables, who had a history of repeated sexual assaults upon women, with a record of criminal convictions and incarceration. Id. Because she was his counselor prior to her romantic involvement with him, Scott had full knowledge of Ables' past. Id. The *Kargul* court stated that "[t]enants . . . have a mutual dependence upon each other for each tenant not to allow a known dangerous person to have free access to the apartment building where each tenant resides. . . . [A] duty to warn is needed for the mutual protection of all tenants. The ability of the plaintiff to provide for her own protection is limited to the control which the defendant has over her apartment. A duty is therefore imposed upon the one possessing control and thus the power to act to take reasonable precautions to protect the other from assaults by third parties which could reasonably have been anticipated." Id.

In denying the defendant's motion for summary judgment, the court held that a jury could find that Scott's conduct was such that she realized or should have realized the likelihood that the situation might be created where Ables would afford himself the opportunity to commit a tort or crime against another female tenant of the apartment building. Here, the defendant had no similar reason to realize that his tenants would assault the plaintiff; nor did this defendant realize or have reason to realize that this particular plaintiff would be passing by his property and be

involved in an altercation with the tenants residing on the property.

## IV

## CONCLUSION

In conclusion, no duty exists between the present defendant and the present plaintiff. The defendant here could not foresee the large group altercation that ensued. Absent information regarding the specific dangerous behaviors, this court cannot conclude that the defendant could have controlled his tenants' behavior.

To impose a duty on a landlord for failing to control tenants who may have a propensity to cause harm would burden this defendant and other landlords in his position. Further, to impose such a duty would necessarily require that a landlord predict violent behavior, resulting in the potential intrusion into tenants' and prospective tenants' affairs.

Connecticut does not recognize a duty between a landlord and a third party who is injured by the negligent or criminal acts of his tenants, therefore, the defendant's motion for summary judgment should be granted.