ADRIANA RUIZ ET AL. *v.* VICTORY
PROPERTIES, LLC
(AC 32852)

Robinson, Alvord and Borden, Js.

Argued December 1, 2011—officially released May 1, 2012

*Michael T. Petela,* with whom, on the brief, was *Angelo Cicchiello,* for the appellant (plaintiffs).

*Frederick M. Vollono,* for the appellee (named defendant).

*Opinion*

BORDEN, J. The plaintiffs, Adriana Ruiz and Olga Rivera,[1] appeal from the grant of summary judgment in favor of the defendant Victory Properties, LLC.[2] On appeal, the plaintiffs claim that the trial court improperly concluded that, under the undisputed facts of the case, the defendant owed them no duty. We agree with the plaintiffs and, accordingly, reverse the judgment of the trial court.

The plaintiffs brought this complaint in negligence, and moved for a prejudgment remedy, which the court, after an evidentiary hearing, granted in part. Thereafter, the defendant moved for summary judgment, which the court granted. This appeal followed.

The record discloses the following undisputed facts, as stated by the trial court in its memorandum of decision on the motion for summary judgment.[3] "On the

---

[1] The plaintiff Olga Rivera brought this action as a parent and next friend of her minor daughter, Adriana Ruiz, and on her own behalf.

[2] The trial court also granted summary judgment in favor of John R. Kovalcik and Intepros, Inc., parties that had been cited in by the plaintiffs as party defendants. John R. Kovalcik and Intepros, Inc., named Saribel Cruz and Delis Cabrera as apportionment defendants in an apportionment complaint.

The plaintiffs have only appealed the trial court's judgment rendering summary judgment in favor of Victory Properties, LLC, and we refer herein to Victory Properties, LLC, as the defendant.

[3] Although, on the summary judgment proceedings, the parties submitted affidavits and the transcript of the prejudgment remedy proceedings as well as the court's memorandum of decision on those proceedings, the summary judgment court issued a specific memorandum of decision stating all of the facts that it considered to be undisputed. We therefore confine our statement

date of this incident, May 14, 2008, the defendant . . . was the owner and landlord of a six-family apartment building located at 138 North Street, New Britain, Connecticut. Saribel Cruz resided in a third floor apartment with her son Luis who was ten years old. Ms. Cruz is the aunt of Adriana Ruiz, who was seven years old. Adriana resided in another apartment with her mother, Olga Rivera. Some buckets, trash, rocks, and broken concrete pieces were located in the backyard of the building. Prior to the incident on May 14, 2008, one tenant had complained to the landlord about the conditions of the backyard.

"On the date of the incident, a number of the children were playing in the backyard, watched by a number of adults. It was common for children who lived in the building, often joined by other neighborhood children, to play in the backyard, where they would sometimes ride or park their bikes, and where they would sometimes use a basketball hoop that had been set up. On this pleasant May day, Luis Cruz decided to see if he could split a rock by throwing it to the ground. He took a large rock from the backyard up to his family's third floor apartment and threw it from the window or [the] balcony to the ground. He saw his cousin Adriana below and yelled to her to get out of the way, but the rock hit her in the head, and she was badly injured."

The court also noted the following in a footnote regarding the object that hit Ruiz: "Olga Rivera has submitted an affidavit in opposition to summary judgment in which she states, 'upon information and belief . . . Luis Cruz, a minor child, picked up a loose piece of concrete or cinder block' and dropped it from the balcony, hitting Adriana. For purposes of summary judgment, an affiant is not permitted to offer evidence

of the facts of the case to those facts determined by the summary judgment court to be those that are undisputed.

upon information or belief, but rather must offer evidence as would be admissible at trial. The transcripts of witnesses at the prejudgment remedy hearing all describe the object thrown by Luis as a 'rock.' From the photographs attached as exhibits to the plaintiff's opposition papers, and from the description of the photographs by Saribel Cruz, it appears that the families in the building may have used the term 'rock' to describe either an actual rock or any large heavy piece of concrete. For consistency, the court will use the term 'rock,' as have the witnesses in the exhibits."

At the outset, we note our standard of review. "Summary judgment is appropriate when the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Thus, because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary . . . ." (Internal quotation marks omitted.) *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 572–73, 893 A.2d 486, cert. denied, 278 Conn. 912, 899 A.2d 38 (2006).

I

The plaintiffs contend that the court improperly granted the defendant's motion for summary judgment on the ground that the defendant owed no duty to the plaintiffs.[4] We agree.

"The existence of a duty of care is a prerequisite to a finding of negligence." *Gomes* v. *Commercial Union*

[4] The plaintiffs also claim that the court improperly disregarded the doctrine of law of the case, arguing that the instant issues were previously ruled on at the prejudgment remedy hearing and that, therefore, the summary judgment court should not have opened what had already been decided. In light of our conclusion that summary judgment was improperly granted on the ground that the defendant owed no duty to the plaintiffs, we need not reach this claim.

*Ins. Co.*, 258 Conn. 603, 614, 783 A.2d 462 (2001). "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant [breached] that duty in the particular situation at hand." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, 246 Conn. 456, 483, 717 A.2d 1177 (1998). "If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384–85, 650 A.2d 153 (1994).

Our Supreme Court has stated that "the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 572, 717 A.2d 215 (1998).

"In negligence cases [such as the present one] in which a tortfeasor's conduct is not the direct cause of the harm, the question of legal causation is practically indistinguishable from an analysis of the extent of the tortfeasor's duty [owed] to the plaintiff." *Malloy* v. *Colchester*, 85 Conn. App. 627, 633–34, 858 A.2d 813, cert. denied, 272 Conn. 907, 863 A.2d 698 (2004). "The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Essential to determining whether a legal duty exists is the fundamental policy of the law that a tortfeasor's responsibility should not extend to the theoretically endless consequences of the wrong. . . . Even where harm was foreseeable, [our

Supreme Court] has found no duty when the nexus between a defendant's negligence and the particular consequences to the plaintiff was too attenuated." (Internal quotation marks omitted.) Id., 634. Put another way, "[i]t is a well established tenet of our tort jurisprudence that [d]ue care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 575.

Ordinarily in tort law, whether a defendant's conduct is tortious is determined by the jury; the jury decides whether the defendant acted reasonably, which ordinarily includes, either explicitly or implicitly, whether the defendant should have reasonably foreseen the adverse consequences of its conduct. *DiPietro* v. *Farmington Sports Arena, LLC*, 123 Conn. App. 583, 620–21, 2 A.3d 963, cert. granted on other grounds, 299 Conn. 920, 10 A.3d 1053 (2010). When, however, a court determines that no tort duty exists because the consequences of the alleged tortfeasor's conduct were too remote to be reasonably foreseeable, what the court is doing is concluding, as a matter of law, that no reasonable juror could find that the defendant should have foreseen the adverse consequences of its conduct. Thus, the question of foreseeability is, in the first instance, a jury question on the issue of negligence, and only becomes a legal question for the court when the defendant claims that the consequences of its conduct were not reasonably foreseeable and, therefore, it owed no duty of care to the plaintiffs.

The plaintiffs argue that the court improperly framed the issue as it did, claiming that the question of duty is based on the foreseeability of the general nature of the harm and not the exact manner in which the harm occurred. In response, the defendant argues that it owed no duty to the plaintiffs, as a matter of law, because this accident was caused by another child, and was simply unforeseeable. We agree with the plaintiffs.

The court, in its memorandum of decision, as the plaintiffs argue, based its conclusion of no duty on the contention that the harm suffered by Ruiz was not foreseeable. In order to establish the element of duty, however, the focus of the inquiry is not on the specific manner in which the harm occurred but instead on whether the general nature of the harm which Ruiz suffered was foreseeable. "[S]o long as harm of the general nature as that which occurred is foreseeable there is a basis for liability even though the manner in which the accident happens is unusual, bizarre . . . ." (Internal quotation marks omitted.) *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 333, 430 A.2d 1 (1980). Therefore, whether a landlord, in the defendant's position, should have been able to foresee the exact manner in which ten year old Luis Cruz would play with the large rock, and ultimately injure Ruiz, is not the proper inquiry.

In this instance, the inquiry regarding foreseeability should depend on whether a reasonable landlord, knowing that dangerous debris is present in a common area where children are known to play, would be able to foresee that a child was likely to suffer harm of the general nature that Ruiz suffered here as a result of children playing in that very area. The proper application of the doctrine that the court must focus on the general nature of the harm suffered, and not the specific manner in which the harm occurred, depends in part on the level of generality with which the nature of the harm is defined. In other words, the more specifically the harm is defined the more it becomes the specific manner in which the harm occurred. For example, in the present case, one could define the harm along the following spectrum of generality: getting hurt by a large rock; getting hurt by a large rock thrown by another child; getting hurt by a large rock thrown by another child from the third floor of the apartment building.

Although a jury *might* find it not foreseeable that a ten year old child would carry a large rock up to a third floor balcony, throw it off, and hit someone below, defining the harm of the general nature in that way as a matter of law would be too specific; it would transform the general nature of the harm into the specific way in which the harm occurred. Instead, we conclude that the appropriate level of generality in the present case is getting hurt by a large rock thrown by another child, and that was certainly foreseeable. Put another way, we think that this case is close enough to the margin of reasonable foreseeability that it would be inappropriate to foreclose the foreseeability inquiry as a matter of law.

The defendant argues, however, that to find a duty under the facts of this case would drastically change the dynamic of the relationship between landlord and tenant, as it would make a landlord strictly liable for the actions of the children of their tenants while they are playing in common areas of the property. The defendant further argues that our jurisprudence is typically against extending a duty in situations where a defendant has no control over the person causing the injury, and that here Ruiz' injuries were due to the intentional act of Luis Cruz, a person over whom the defendant had no control. In support of that argument the defendant relies heavily on case law that discusses situations where a landlord does not owe its tenants a duty to protect them from injuries caused by the intentional or criminal acts of a third party.[5] The defendant's arguments, however,

---

[5] The defendant cites to an Illinois Appellate Court decision, *Trice* v. *Chicago Housing Authority*, 14 Ill. App. 3d 97, 302 N.E.2d 207 (1973), for the proposition that it does not owe a duty to the plaintiffs because of Luis Cruz' status as a third party. In *Trice*, the plaintiff's argument was that the landlord had a police duty to stop intentional criminal acts. Id., 100–101. Not only does the present case not deal with a criminal act, but the plaintiffs here do not suggest that the defendant should have protected them from Luis Cruz, a third party; the plaintiffs merely seek a ruling that the defendant is held accountable for its violation of its duty to maintain safe common areas of its premises. The defendant's reliance on *Spencer* v. *Nesto*, 46 Conn.

are unpersuasive and mischaracterize the plaintiffs' claim.

Under the facts of this case, and in particular in light of the fact that Luis Cruz yelled out a warning before he let the rock drop, it is clear that he did not intentionally harm Ruiz. Furthermore, the plaintiffs have not alleged, and are not claiming, that the defendant failed to protect them from the intentional acts of Luis Cruz. They are claiming that the defendant neglected its property and left it in a dangerous condition that caused a foreseeable injury to Ruiz.

The defendant permitted the backyard of its apartment building to remain littered with dangerous debris knowing that that very location was used as a play area for children who resided in the building. The defendant can be charged with notice of the dangerous nature of the area, because the summary judgment court found it to be undisputed that one tenant had complained to the defendant about the conditions of the backyard. Nonetheless the yard contained, as the summary judgment court found to be undisputed, "[s]ome buckets, trash, rocks, and broken concrete pieces . . . ." A jury could find it foreseeable that one child would pick up a piece of the debris and throw it, thus injuring another child.

In determining whether a duty of care exists, the second consideration is whether there are reasons of public policy to extend such a duty to the defendant under the circumstances. "[I]n considering whether public policy suggests the imposition of a duty, we . . . consider the following four factors: (1) the normal expectations of the participants in the activity under

Sup. 566, 764 A.2d 224 (2000), is similarly misplaced. In that case, the superseding cause doctrine was applied to the criminal acts of a landlord's tenant, not unintentional acts.

review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." (Internal quotation marks omitted.) *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 118, 869 A.2d 179 (2005). "[A] totality of the circumstances rule . . . is most consistent with the public policy goals of our legal system, as well as the general tenor of our tort jurisprudence." Id., 121. We apply these four factors and conclude that imposing a duty of care on the defendant under the circumstances of the present case is not inconsistent with public policy.

Under the first factor, the court looks to the normal expectations of the parties in the activity under review. The activity under review here is the use of a common area of an apartment building by tenants and their children. The plaintiffs argue that the defendant failed to conform to the reasonable expectations of the tenants, in that the common areas of an apartment building should be adequately maintained so that they are safe for tenants and their families. The plaintiffs further posit that there is a strong public policy that landlords need to be held accountable when they ignore the responsibility of maintaining a safe environment. It is not unreasonable for a tenant to expect a landlord to maintain the common areas of its properties and keep them free of dangerous debris, especially when a landlord has knowledge that children often play in the area in question. Additionally, it is unreasonable for a landlord to expect that it can continue to conduct its business, while ignoring its obligation to maintain common areas and address tenant safety concerns.

The second factor, encouraging participation in the activity, also favors imposing a duty. "[This] factor requires [consideration of] the benefits, if any, of encouraging the underlying activity . . . ." *Seguro* v.

*Cummiskey,* 82 Conn. App. 186, 196, 844 A.2d 224 (2004). As a matter of public policy, it is desirable to promote the maintenance of common areas in properties such as the apartment building in this case, so that children can socialize and play in safe environments. A finding against the imposition of a duty would discourage parents from allowing their children to play and utilize the common areas of apartment buildings. It would also require tenants in such dwellings to exercise a much higher degree of vigilance in monitoring their children's activities in order to prevent exposure to potentially dangerous materials. There is certainly a strong public policy in favor of facilitating and encouraging children to play and socialize without forcing an overly heightened degree of vigilance upon parents.

The third factor, which is the likelihood that imposing such a duty would lead to increased litigation, is an admittedly weaker factor; it does not, however, compel the conclusion that imposing a duty of care on the defendant is inconsistent with public policy. Extending liability to those landlords or property owners who fail to use reasonable care to maintain a safe environment in common areas in order to protect their tenants from foreseeable harm, will not unnecessarily increase litigation but, rather, will provide an incentive to landlords and property owners to act responsibly toward their tenants.

Finally, the fourth factor, concerning the decisions of other jurisdictions, is not particularly helpful because there are multiple ways in which our sister states handle the question of duty with respect to premises liability. As there is no compelling reason grounded in public policy to shield the defendant from its duty, we therefore conclude that the defendant owed the plaintiffs a reasonable duty of care.

The dissent concludes, to the contrary, that "the defendant cannot be held liable to the plaintiffs for the

harm caused by an eighteen pound concrete cinder block being dropped from a third story balcony onto the head of Ruiz." We disagree.

First, it is not undisputed that the rock that hit Ruiz weighed eighteen pounds, or that it was even a concrete cinder block. As we indicated, although there was some testimony to that effect before the prejudgment remedy court, the summary judgment court did not determine that factual assertion to be undisputed, and in fact simply referred to the item as a large rock. Second, even if it were ultimately determined to have weighed eighteen pounds, we think that the weight of the rock and the place from which it was thrown are precisely the types of foreseeability inquiries that are more appropriately left to the jury, rather than to the court as a matter of law.

II

In addition, to the extent that the court relied on the doctrine of superseding cause to reach its decision, the plaintiffs argue that the court improperly applied that doctrine. We agree.

In *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 436–39, 820 A.2d 258 (2003), our Supreme Court stated: "[T]he doctrine of superseding cause no longer serves a useful purpose in our jurisprudence when a defendant claims that a subsequent negligent act by a third party cuts off its own liability for the plaintiff's injuries. We conclude that under those circumstances, superseding cause instructions serve to complicate what is fundamentally a proximate cause analysis. Specifically, we conclude that, because our statutes allow for apportionment among negligent defendants; see General Statutes § 52-572h; and because Connecticut is a comparative negligence jurisdiction; General Statutes § 52-572o; the simpler and less confusing approach to cases, such as the present one, where the jury must

determine which, among many, causes contributed to the plaintiffs' injury, is to couch the analysis in proximate cause rather than allowing the defendants to raise a defense of superseding cause." The court then explained that its holding is limited to cases in which a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence, and that its holding does not necessarily affect those cases where the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct. Id., 439 n.16.

The defendant argues that, even if it did owe a duty to the plaintiffs, Luis Cruz was an "unforeseeable" intentional tortfeasor and that, therefore, the young boy's actions cut off any potential liability of the defendant. It is clear from the undisputed facts, however, that the actions of Luis Cruz were neither intentional nor criminal and thus, according to *Barry*, application of the superseding cause doctrine would not be appropriate. At the same time, our Supreme Court in *Barry*, did not decide that intervening events would no longer play a role in assessing liability for negligent conduct. Instead, it held that analysis of causation issues relating to such events should be governed by the general law of proximate cause rather than by the assignment of a dispositive role to any one of the causes contributing to a plaintiff's injury. *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 446. One reason underlying the court's decision was its recognition of the dominant role that comparative negligence has come to play in our assignment of responsibility for personal injury. Id., 442–46. Here, however, the court determined that Luis Cruz' actions were "the most proximate cause" and, therefore, assigned his role in this unfortunate event as the dispositive cause, disregarding any potential contributory roles of other causes such as the defendant's

failure to maintain a safe common area. It was improper for the court to foreclose the plaintiffs from recovery merely because another party may have subsequently contributed to Ruiz' injury. The inquiry by a court in such a circumstance should be whether the allegedly negligent conduct of *any* actor was a proximate cause and then each actor would pay his or her proportionate share, regardless of whether another's conduct also contributed to the plaintiff's injury.

"Because actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions. . . . The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct. . . . In negligence cases . . . in which a tortfeasor's conduct is not the direct cause of the harm, the question of legal causation is practically indistinguishable from an analysis of the extent of the tortfeasor's duty to the plaintiff." (Internal quotation marks omitted.) *Malloy* v. *Colchester*, supra, 85 Conn. App. 633–34. Therefore, since we have already determined the question of whether a duty was owed by the defendant, it would be repetitive for us to engage in an analysis concerning proximate cause.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for summary judgment, and for further proceedings according to law.

In this opinion ROBINSON, J., concurred.

ALVORD, J., dissenting. The case at bar is a very tragic case involving a young child who suffered serious injuries from an eighteen pound cinder block that had been dropped on her head by a ten year old playmate

from the third floor balcony of the landlord's six unit apartment building. While I in no way condone the failure of the landlord to remove the cinder blocks and other debris from the yard of its rental property, I cannot agree with the majority that the child's injuries were a reasonably foreseeable consequence of the landlord's conduct. Accordingly, I respectfully dissent.

This is an appeal from a summary judgment rendered against the plaintiffs, Adriana Ruiz and Olga Rivera,[1] in favor of the defendant, Victory Properties, LLC, in an action for negligence. The trial court concluded that there were no genuine issues of material fact as to whether the defendant owed a duty to the plaintiffs under the circumstances of this case. In reaching this determination, the court was required to consider the facts in the light most favorable to the plaintiffs, the nonmoving parties. *Interface Flooring Systems, Inc.* v. *Aetna Casualty & Surety Co.*, 261 Conn. 601, 605, 804 A.2d 201 (2002).

In their complaint, the plaintiffs alleged that the defendant landlord owned an apartment building in New Britain (property), that the plaintiffs were lawful tenants of the property and that the defendant failed to remove "debris and loose concrete and cinder blocks" from the property. The complaint further alleged that another tenant of the property, a minor, "picked up a loose piece of concrete/cinder block from a large pile of other broken pieces of cement and cinder blocks loosely located in the backyard of the subject [p]roperty, carried said piece of concrete to the third floor apartment of said subject [p]roperty, walked out onto the back porch and dropped said large piece of concrete/cinder block from the third floor balcony onto the head of [Ruiz], who was standing in the immediate

---

[1] The plaintiff Olga Rivera brought this action as parent and next friend of the plaintiff Adriana Ruiz, her minor daughter, and on her own behalf.

vicinity of the exterior back wooden porch of said property."

Following a hearing on the plaintiffs' application for a prejudgment remedy, they submitted a brief summarizing the testimony and evidence presented at that hearing. The plaintiffs, after repeating the allegations in their complaint, proceeded to describe the object dropped from the balcony as either a "concrete block" or a "cement block" several times throughout the brief. In its memorandum of decision on the application for a prejudgment remedy, the court, *Vacchelli, J.*, stated the facts of the case: "In that accident, [Ruiz], then age seven, was struck on the head by an eighteen pound concrete block dropped by another child playing on a third floor balcony above her."

On appeal before this court, the plaintiffs consistently have represented that Ruiz was hit by a large piece of concrete or a cinder block. In their appellate brief, the plaintiffs stated that the ten year old playmate "picked up an eighteen pound piece of concrete/cinder block from a large pile of other loose broken pieces of concrete/cinder blocks located in the backyard of the [s]ubject [p]remises." Thrice more in their brief they refer to the "eighteen pound cinder block" or "eighteen pound brick" as being the object that struck Ruiz. Reviewing the facts in the light most favorable to the plaintiffs, and there being no argument to the contrary, I refer to the object dropped on Ruiz' head as an eighteen pound cinder block.

With these facts in mind, it is necessary to review our case law to determine whether the defendant can be held legally accountable for Ruiz' injuries. The majority opinion first sets forth the applicable principles for determining whether the defendant owed a legal duty[2]

---

[2] "The test for determining legal duty is a two-pronged analysis that includes: (1) a determination of foreseeability; and (2) public policy analysis. . . . The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . [In other

to Ruiz and then focuses on the foreseeability of the harm that she suffered. It frames the inquiry as "whether a reasonable landlord, knowing that dangerous debris is present in a common area where children are known to play, would be able to foresee that a child was likely to suffer harm of the general nature that [Ruiz] suffered here as a result of children playing in that very area" and concludes that "the appropriate level of generality in the present case is getting hurt by a large rock thrown by another child, and that was certainly foreseeable." I disagree and conclude that simply getting hurt by the cinder block is too general a standard to be used for the test of foreseeability.

By employing a foreseeability test that incorporates such a high level of generality to the harm in this case, the majority essentially has created a strict liability standard.[3] The term "general harm" logically cannot be extended to incorporate any injury that occurs by a piece of debris left in the landlord's common area.[4] "It

---

words], would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" (Citation omitted; internal quotation marks omitted.) *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 114–15, 869 A.2d 179 (2005).

[3] The trial court, in discussing the ramifications of extending a duty of care to the defendant under the circumstances of this case, made the following astute observations: "What would be the limitation of liability on a landlord for personal injury to a tenant if liability is imposed in this case? Suppose there is heavy lawn furniture in the backyard? What about the sandbags or weights used to stabilize a patio umbrella or a moveable basketball backboard? (In fact, one photograph submitted as an exhibit in this case shows a large rock used to stabilize the basketball hoop apparatus in this backyard.) What about a flowerpot near the back steps? If thrown off a balcony, practically anything can constitute a dangerous missile."

[4] The majority contends that the size and the nature of the object were not undisputed. It concludes that the object is a large rock. To me, this conclusion strengthens the defendant's argument that imposing a legal duty under the circumstances of this case would result in strict liability for any objects left in common areas by landlords. Is a landlord obligated to remove every rock, every branch and every piece of debris from its property to avoid liability for possible injuries to a child caused by the irresponsible actions of another child?

is impractical, if not impossible, to separate the question of duty from an analysis of the cause of the harm when the duty is asserted against one who is not the direct cause of the harm. In defining the limits of duty, we have recognized that [w]hat is relevant . . . is the . . . attenuation between [the defendant's] conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand. . . . It is a well established tenet of our tort jurisprudence that [d]ue care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable." (Citation omitted; internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 574–75, 717 A.2d 215 (1998).

Here, the alleged negligent conduct of the defendant was its failure to remove "debris and loose concrete and cinder blocks" from its property, thereby creating "a dangerous and unsafe condition." The complaint also alleged that the defendant knew or should have known that children assembled and played games on that property. The plaintiffs' basic claim, as I see it, is that Ruiz would not have been injured if the defendant had removed the debris from its property because then there would have been no cinder block for a child to carry up the stairs and to drop from the third floor balcony.[5]

Applying the standards previously discussed, I would frame the relevant duty inquiry as whether the defendant would *reasonably* foresee that a ten year old child would pick up an eighteen pound cinder block, carry it up several flights of stairs to the third floor of the apartment building and drop it on the head of the seven

---

[5] As noted in the majority opinion, the plaintiffs also claim that the trial court improperly disregarded the doctrine of the law of the case. See footnote 4 of the majority opinion. Simply stated, a judge is not bound to follow a previous judge's ruling in an earlier stage of the proceedings if the subsequent judge is now of the opinion that the previous ruling was incorrect. See *Breen* v. *Phelps*, 186 Conn. 86, 98–99, 439 A.2d 1066 (1982).

year old Ruiz.[6] This incident happened even though there were adults present to supervise the children and the ten year old playmate saw his younger friend standing in the area below the balcony when he dropped the cinder block into the backyard. I conclude that the harm suffered is too attenuated from the alleged negligent conduct of the defendant. It certainly was foreseeable that a child might trip and fall over the debris or even throw a piece of concrete at another child. In this case, the ten year old, if he had thrown the eighteen pound cinder block at Ruiz in the backyard, could not have caused the type of harm that she suffered by having it dropped three stories onto her head. I cannot agree that the defendant would reasonably foresee that its conduct in leaving cinder blocks and other debris in the backyard would result in the catastrophic result in this case.[7] "To hold otherwise would be to convert the imperfect vision of reasonable foreseeability into the perfect vision of hindsight." *Burns* v. *Gleason Plant Security, Inc.*, 10 Conn. App. 480, 486, 523 A.2d 940 (1987).

---

[6] Nothing in the record indicates that there were any previous incidents in which children threw backyard debris from the building's balconies.

[7] Because I conclude that there is no legal duty because the harm was not reasonably foreseeable, it is not necessary to undertake a public policy analysis. See *Monk* v. *Temple George Associates, LLC*, supra, 273 Conn. 114–15. Nevertheless, I agree with the trial court that extending liability under the circumstances of this case would create substantial economic and social costs. In its memorandum of decision, the court thoughtfully stated: "It cannot be ignored that this incident was precipitated by a child acting, as children often do, in a playful but irresponsible manner. To create liability for landlords in this situation would likely discourage landlords from renting apartments to families with young children. It would surely drive up the economic costs associated with maintaining and insuring rental properties, without a concomitant benefit of safeguarding against conditions and hazards that are much more prevalent than the one here. Recognizing such a duty, rather than contributing to the welfare of the public, is more likely to create a new burden on families looking for affordable rental housing. Though imposing liability on the defendant would surely be a benefit to the [minor] plaintiff and her family, the overall economic and societal costs militate against such an imposition in like situations."

I therefore conclude that, under the particular circumstances of this case, the defendant landlord cannot be held liable to the plaintiffs for the harm caused by an eighteen pound cinder block being dropped from a third story balcony onto the head of the minor plaintiff. The law should not countenance the extension of legal responsibility to such an attenuated result. I would affirm the judgment of the trial court and, accordingly, I respectfully dissent.[8]

---

[8] In part II of its opinion, the majority concludes that the trial court also improperly relied on the doctrine of superseding cause to reach its decision. I disagree with that interpretation. Nevertheless, assuming arguendo that the court erroneously applied the doctrine, this court may uphold the judgment "because [the trial court] reached the right result, even if it did so for the wrong reason." (Internal quotation marks omitted.) *Weigold* v. *Patel*, 81 Conn. App. 347, 353 n.5, 840 A.2d 19, cert. denied, 268 Conn. 918, 847 A.2d 314 (2004).